In re William Herbert HUNT and Nancy Jane Broaddus Hunt, Debtors.

In re Nelson Bunker HUNT and Caroline Lewis Hunt, Debtors.

ROYAL BANK OF CANADA,
Plaintiff–Appellant,

v.

William Herbert HUNT and Nancy Jane Broaddus Hunt, Defendants–Appellees.

BANKERS TRUST COMPANY,
Plaintiff–Appellant,

v.

William Herbert HUNT and Nancy Jane Broaddus Hunt, Defendants–Appellees.

BANKERS TRUST COMPANY,
Plaintiff–Appellant,

v.

Nelson Bunker HUNT and Caroline Lewis Hunt, Defendants–Appellees.

ROYAL BANK OF CANADA,
Plaintiff–Appellant,

v.

Nelson Bunker HUNT and Caroline Lewis Hunt, Defendants–Appellees.
(Two Cases)

BANKERS TRUST COMPANY,
Plaintiff–Appellant,

v.

Nelson Bunker HUNT and Caroline Lewis Hunt, Defendants–Appellees,

Manufacturers Hanover Trust Company, United States of America, Minpeco, S.A., George R. Truitt, Trustee for Hunt International Resources Corporation, and R. Carter Pate, Trustee for the NBH Liquidating Trust and Steven S. Turoff, Trustee for the WHH Liquidating Trust, Joint Plan Proponents–Appellees.

Civ. A. Nos. CA3–90–0199–D to CA3–90–0202–D, CA3–90–0473–D and CA3–90–0474–D.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 19, 1991.

Robert M. Cohan and Sabrina Skeldon, Cohan, Simpson, Cowlishaw, Aranza & Wulff, Dallas, Tex., for plaintiff-appellant Bankers Trust Co.

Jim K. Choate, John P. Lilly, and Julie Ison Haley, Choate & Lilly, P.C., Dallas, Tex., for plaintiff-appellant Royal Bank of Canada.

Stephen A. McCartin and Robin I. Nozick, Gardere & Wynne, Dallas, Tex., for defendants-appellees William Herbert Hunt and Nancy Jane Broaddus Hunt.

Russell L. Munsch and Joe E. Marshall, Decker, Hardt, Kopf, Harr, Munsch & Dinan, P.C., Dallas, Tex., for defendants-appellees Nelson Bunker Hunt and Caroline Lewis Hunt.

Gerald K. Smith, Lewis and Roca, Phoenix, Ariz., for joint plan proponents-appellees R. Carter Pate, Trustee for NBH Liquidating Trust and Steven S. Turoff, Trustee for WHH Liquidating Trust.

Barbara Houser, Sheinfeld, Maley & Kay, Dallas, Tex., John E. Corette, III, Mark A. Cymrot, and Thomas O. Gorman, Cole Corette & Abrutyn, Washington, D.C., and Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for joint plan proponent-appellee Minpeco S.A.

Grover Hart, Dept. of Justice, Tax Div., and Linda Groves, Asst. U.S. Atty., Dallas, Tex., for joint plan proponent-appellee U.S.

Hugh Ray and R. Terry Bell, Andrews & Kurth, Dallas, Tex., and M.O. Sigal, Jr., Simpson Thacher & Bartlett, New York City, for joint plan proponent-appellee Mfrs. Hanover Trust Co.

Claude Montgomery, Milgram, Thomajan & Lee, New York City, for appellee George R. Truitt, Chapter 11 Trustee for Hunt Intern. Resources Corp.

FITZWATER, District Judge:

Appellants Royal Bank of Canada ("RBC") and Bankers Trust Company ("BTC") appeal four orders of the bankruptcy court which confirmed joint plans of reorganization of chapter 11 debtors Nelson Bunker Hunt ("Nelson") and William

Herbert Hunt ("Herbert") (collectively "the Hunt Brothers") and their respective wives (collectively "the Debtors") and discharged claims brought by appellants in the Debtors' bankruptcies. Concluding appellants' arguments present no basis for reversal, the orders are affirmed.

I

The bankruptcy proceedings of the Debtors and affiliated entities are reported, *see In re William Herbert Hunt Trust Estate*, 92 B.R. 172 (Bankr.N.D.Tex.1988), as is the bankruptcy of Placid Oil Company ("Placid"), which is pertinent to this appeal. *See In re Placid Oil Co.*, 92 B.R. 183 (Bankr.N. D.Tex.1988). The court assumes familiarity with these bankruptcy court decisions and sets out only the facts pertinent to the present appeal.

In 1986 the Hunt Brothers, the William Herbert Hunt Trust Estate,[1] the Nelson Bunker Hunt Trust Estate ("Nelson Estate"), Placid, Penrod Drilling Company, and related plaintiffs filed suit against RBC, BTC, and several other banks who had lent money to Placid. *See Huddleston v. Nelson Bunker Hunt Trust Estate*, 102 B.R. 71, 72 (N.D.Tex.1989); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1064 (5th Cir.1986). The banks counterclaimed. Thereafter, Placid filed a voluntary chapter 11 petition. The Placid bankruptcy and the litigation between Placid and its lenders proceeded simultaneously. The banks were the largest Placid creditors.

During the pendency of these proceedings, Nelson's son-in-law, Albert D. Huddleston ("Huddleston"), filed suit in Texas state court on behalf of Nelson's grandchildren against BTC, RepublicBank, N.A., and F.C. Vickers (the trustee of the Nelson Estate), alleging the two banks, for themselves and as agents of other Placid lenders, had loaned money to Placid illegally by causing an invasion of the trust corpus of the Nelson Estate. Huddleston sought to recover in excess of $800 million and re-

quested an injunction to prevent the lender banks from enforcing the loan agreements. The action was voluntarily dismissed without prejudice.

In 1988, following extensive negotiations, the parties to the lender bank litigation and Placid bankruptcy reached a global settlement. Appellants contend the lender banks made substantial concessions to facilitate the compromise. To reduce the potential for future litigation—in particular, of the type brought by Huddleston—appellants and the other banks insisted their approval of the Placid reorganization plan ("Placid Plan") be tied to the Hunt Brothers' executing certain releases, consents, and indemnities. One such indemnity agreement (the "Indemnity Agreement") is at issue in the present appeal. By its terms the Hunt Brothers agreed to indemnify and secure the lender banks, including appellants RBC and BTC, from claims asserted against the banks by reason of their relationship with Placid. The Debtors executed the Indemnity Agreement on September 20, 1988. The next day Nelson and Herbert filed individual chapter 11 petitions, followed two days later by similar filings by their wives.

On September 30, 1988, following extensive hearings, the bankruptcy court confirmed the Placid Plan. *See Placid Oil*, 92 B.R. at 183. Among other things, the confirmation order "forever enjoined" any holder of an interest or claim, any debtor, plan proponent, signing party, initial beneficiary, subsequent beneficiary, or other party-in-interest, or any person acting or purporting to act by, through, under, or on behalf of any of the foregoing, from undertaking any act to avoid any obligation imposed by the Plan or a Plan document, order ¶ 7, 92 B.R. at 196, from commencing any action in any court seeking to modify any term of the Plan or any Plan document or an act to be taken thereunder (except for proceedings brought in the bankruptcy

---

**1.** Nelson and Herbert, together with brother Lamar (who did not individually file for bankruptcy), are beneficiaries of trust estates established for each of them by their parents. Each trust estate is managed by a trustee who is advised by an advisory board. *See William Herbert Hunt Trust Estate*, 92 B.R. at 173. The three trust estates own Placid. Each trust estate, and Placid, filed for bankruptcy in 1986 and 1987.

court as contemplated by the Plan and other proceedings permitted by order of the bankruptcy court), order ¶ 8, 92 B.R. at 196, provided that the Plan's terms were "forever afterwards" binding, order ¶ 12, 92 B.R. at 197, and stated no Plan or confirmation order provision gives, or shall be construed to give, the bankruptcy court power to modify or impair any right, title, interest, privilege, or remedy provided or reserved under the Plan or any Plan document, order ¶ 30(c), 92 B.R. at 200.

Twenty-one of the indemnified banks—including appellants RBC and BTC and appellee Manufacturers Hanover Trust Company ("MHT")—filed proofs of claim in the Debtors' bankruptcy cases based upon the Indemnity Agreement. At the time the proofs of claim were filed, there were no pending suits of a kind covered by the Agreement.

Thereafter, a variety of plans of reorganization were submitted in the Debtors' bankruptcies, including joint plans proposed by appellees MHT, George R. Truitt, Trustee for Hunt International Resources Corporation, the United States of America (on behalf of the Internal Revenue Service), Minpeco, S.A., and Nelson and Herbert. The proposed joint plans established liquidating trusts from which general unsecured claims were to be paid. Appellants RBC and BTC's claims under the Indemnity Agreement were treated as general unsecured claims and the claims were estimated. This permitted the claims to be discharged and the Placid lender banks, including appellants, to be paid from the liquidating trusts.

The plan proponents—other than MHT—objected prior to confirmation to the Indemnity claims of any lender banks, contending the claims were contingent and otherwise were not allowable under the Bankruptcy Code. Most lender banks failed to respond to the objections and the bankruptcy court defaulted their claims. Four banks, including appellants, urged the bankruptcy court to permit their claims to pass-through the Debtors' bankruptcies undischarged.

Following evidentiary hearings, including a hearing on December 15, 1989 [2] at which time it considered the objections to the lender banks' Indemnity Agreement claims, the bankruptcy court in separate orders approved joint plans of reorganization (the "Joint Plans") for Nelson and his wife and Herbert and his wife. The Joint Plans classified the Indemnity claims as general unsecured claims, provided for their payment in an estimated amount, and discharged them. The bankruptcy court also entered two orders estimating the value of appellants' claims at one dollar, allowing the claims in the estimated amount, discharging the claims, and otherwise rejecting appellants' requests for pass-through treatment. From these four orders RBC and BTC bring these consolidated appeals.

## II

Appellants argue the bankruptcy court orders in question impermissibly collaterally attacked the Placid confirmation order and Placid Plan and were foreclosed by the doctrine of *res judicata*, by equitable or judicial estoppel, or as being violative of 11 U.S.C. § 1127.

## A

Appellants' contention that *res judicata* precluded the bankruptcy court from discharging the Indemnity Agreement in the Debtors' individual bankruptcies is misplaced.[3] This doctrine provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citation omitted). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial re-

---

**2.** There are references in the briefing to December 14 and 15, 1989 hearing dates. The court utilizes here the date shown on the hearing transcript made a part of the record on appeal.

**3.** Appellees challenge whether appellants adequately preserved this argument for appellate review. The record reflects that appellant BTC did preserve the question. Accordingly, the court addresses it.

sources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* A party who seeks to invoke the bar must show: (1) identical parties in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *See Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1051 (5th Cir.1987) (citation omitted).

*Res judicata* applies to "claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication." *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560 (5th Cir.1983) (en banc) (emphasis deleted) (citation omitted). While the Fifth Circuit's adoption of the transactional test of the Restatement (Second) of Judgments [4] expands somewhat the concept of "same cause of action," it is apparent from the Restatement that the bar applies only to "rights of the plaintiff to remedies against the defendant." *See id.* at 560 n. 5 (quoting the Restatement at § 24(1)).

It is in the examination of the "claim" and "cause of action" elements of *res judicata* that appellants' reliance on the doctrine is found to be unwarranted. The court has considerable difficulty identifying the "claim" or "cause of action" that appellants contend was litigated in the Placid case and impermissibly relitigated in the Debtors' individual bankruptcies. In the Placid case and lender bank litigation, appellants asserted claims for repayment of loans. The Indemnity Agreement and Placid Plan provisions were constituent parts of a settlement that brought the litigation to a close. They were not the basis for appellants' substantive theories of recovery. While the specific terms of the Agreement and Placid Plan may have been vigorously *negotiated,* they were not in any respect *adjudicated* on the merits in the sense pertinent to the *res judicata* doctrine.

■ If it can be said the Indemnity Agreement and Placid Plan were in fact litigated, they were not relitigated in the Debtors' individual bankruptcies. The Debtors did not contest the validity of the obligations imposed upon them by the Indemnity Agreement and Placid Plan. They fully conceded them. What the Debtors did was insist upon their right to discharge their obligations in bankruptcy. When appellants sought to preclude the Debtors from doing so—by urging the bar of *res judicata*—they did not seek to foreclose the Debtors from relitigating a claim or cause of action that belonged to the appellants. Rather, they sought to foreclose the Debtors from interposing a defense, that is, a right of avoidance, created by bankruptcy law. *Cf.* Fed.R.Civ.P. 8(c) (listing discharge in bankruptcy as affirmative defense); Fed.R.Bankr.P. 7008(a) (adopting Rule 8 in adversary proceedings). *Res judicata* does not preclude relitigation of individual issues or defenses; it cuts off reprosecution of claims and causes of action, and is thus understood to be a doctrine of claim preclusion.

Even the cases appellants cite in support of their *res judicata* argument illustrate this.

In *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358 (5th Cir.1972), *res judicata* was held to bar a fraud claim that one creditor could have asserted against another creditor—but did not—in the prior bankruptcy case of a third party. In a subsequent lawsuit brought by the creditor the court held the alleged fraud of the other creditor was an issue that could have been litigated in the bankruptcy. *Res judicata* was invoked to bar a claim, not a defense. *See id.* at 360.

In *In re Constructors of Fla., Inc.,* 349 F.2d 595 (5th Cir.1965), *cert. denied,* 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966), the court held to be precluded from relitigation in the bankruptcy court the claims of creditor-banks for recovery on chattel mortgages that had been held unen-

---

**4.** The Fifth Circuit adopts the transactional test of the Restatement (Second) of Judgments. *See Ocean Drilling & Exploration Co., Inc. v. Mont*

*Boat Rental Servs., Inc.,* 799 F.2d 213, 217 (5th Cir.1986).

forceable in a prior state court case. *See id.* at 600–01.

*Republic Supply Co. v. Shoaf,* a case on which appellants rely extensively, involved a civil action in which a plaintiff's suit to recover on a guaranty was held to be barred because the claim had been released by the plan confirmation order in a third party's prior bankruptcy, a proceeding in which the plaintiff had originally sought to enforce the guaranty. *See* 815 F.2d at 1054.

In *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984), *res judicata* was determined to preclude a civil action and the assertion of counterclaims of breach of contract and duty of good faith, fraud, and extortion that could have been asserted as claims in prior litigation between the parties and their privies. *See id.* at 872.

In *Ocean Drilling & Exploration Co., Inc. v. Mont Boat Rental Servs., Inc.,* 799 F.2d 213 (5th Cir.1986), the court held that *res judicata* barred a second suit by an oil company seeking indemnification for a judgment rendered against it in a personal injury action, when the company could have brought the claim as part of a third-party action it prosecuted against the same defendant as part of the personal injury suit. *See id.* at 216–17.

Without suggesting that any theory is available to prospectively foreclose a debtor from exercising its right to a discharge in bankruptcy, the court observes that collateral estoppel—or issue preclusion—is closer to the mark than is *res judicata.* "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen,* 449 U.S. at 94, 101 S.Ct. at 414. (citation omitted).[5]

■ But the court stresses the need to be circumspect in according force to com-

mon law doctrines that may undercut the Bankruptcy Code's careful preservation of debtor rights. As the court explains *infra,* Congress has balanced Code provisions which permit waiver of discharge and reaffirmation of debts with procedures designed to protect debtors from unwittingly relinquishing this cornerstone of the Bankruptcy Code's fresh start. Thus courts have declined to enforce, as violative of public policy, waivers of the right of discharge that do not comply with Code procedures, even when made part of a prior court judgment. *See Klingman v. Levinson,* 831 F.2d 1292, 1296 n. 3 (7th Cir.1987) (agreeing that state court stipulated judgment which expressly provided debt would "not be dischargeable in any bankruptcy or similar proceeding" did not constitute waiver of right to have bankruptcy court determine dischargeability); *In re Ethridge,* 80 B.R. 581, 586 (Bankr.M.D.Ga.1987) (voiding consent judgment that waived right of discharge as contrary to spirit of Bankruptcy Code). *A fortiorari,* doctrines such as *res judicata,* pursuant to which unasserted claims that could have been advanced in support of a cause of action can be held barred in subsequent litigation, should not be applied in a manner which permits the *sub silentio* waiver of rights that the Bankruptcy Code allows to be relinquished only according to explicit procedures.

The court concludes *res judicata* does not apply to the present facts and therefore did not preclude the bankruptcy court from discharging the Indemnity Agreement in the Debtors' bankruptcies.

**B**

Appellants next urge reversal on the basis that the Debtors are equitably or judicially estopped from impairing appellants' rights under the Indemnity Agreement.

■ Appellants' equitable estoppel argument is without merit. Appellants had the obligation to present their estoppel ar-

---

5. Although appellants refer in their brief to an impermissible "collateral attack" on the Placid Plan and confirmation order, it is abundantly clear they have presented for review only a *res judicata* argument. *See* Appellants Br. at 8–12 (asserting "The Placid Confirmation Order is *Res Judicata* and Must Be Enforced," and arguing the record satisfies each of the four elements required for application of *res judicata* ).

gument to the bankruptcy court because estoppel is a theory on which they had the burden of proof. *Cf.* Fed.R.Civ.P. 8(c) (estoppel is affirmative defense in civil action); Fed.R.Bankr.P. 7008(a) (applying Rule 8(c) to adversary proceedings). They were also required to obtain findings by the bankruptcy court or complain of the bankruptcy court's failure to enter findings. Appellants contend in their brief that their appeal "involves only legal conclusions made by the Bankruptcy Court." Appellants Br. at 2. They therefore urge the court to decide the questions on appeal *de novo*, according to the standard for reviewing a bankruptcy court's conclusions of law. But to prevail on equitable estoppel, appellants must have proved factual elements, including whether they acted in reliance upon the Debtors' positions in the Placid bankruptcy.[6] Appellants contend before this court that they did rely, but appellees deny that reliance is established in the record. *See* Appellees (Plan Proponents) Br. at 12–13 & 13 n. 11. Appellants have presented no basis for this court to determine the bankruptcy court even considered, much less clearly erred in deciding, their equitable estoppel theory. Because they concede in their brief that their appeal challenges only legal conclusions made by the bankruptcy court, any quarrel they have with constituent fact findings is not preserved for review and their argument presents no ground for disturbing the bankruptcy court's orders.

▮▮▮ Appellants' judicial estoppel assertion also presents no basis for reversal. Judicial estoppel applies to a party who "successfully and unequivocally" asserts a position in a prior proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982). It "addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal." *Id.* at 599. The doctrine thereby protects the judiciary as an institution from the perversion of the judicial machinery. *Id.* "In light of the policies underpinning judicial estoppel, the rule [cannot] be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding." *Id.* (citations omitted). The Debtors did not take the position in the Placid case that they waived their rights to discharge particular debts in the event they filed individual bankruptcy petitions. They were not therefore judicially estopped from asserting the right in their bankruptcies.

Moreover, judicial estoppel does not apply in the case of a settlement. *See id.* This is so because the position taken in the initial proceeding cannot be viewed as having been successfully asserted. *Id.* "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists." *Id.* Because the record indicates plainly that appellants settled and compromised the Placid bankruptcy case and lender bank litigation, this too precludes a finding of judicial estoppel.

### C

▮▮▮ Appellants also argue the discharge of the Indemnity claims violated 11 U.S.C. § 1127[7] because the Debtors used

---

6. Appellants concede in their brief that this is the second element of equitable estoppel. Appellants Br. at 12.

7. 11 U.S.C. § 1127:
    (a) The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.
    (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and be-

fore substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.
    (c) The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.
    (d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed

their individual bankruptcies to modify the substantially consummated Placid Plan. The court is not persuaded, however, that § 1127 extends to constructive plan modifications. And the Debtors' individual bankruptcies did not purport expressly to modify the Placid Plan in any respect.

### III

■ Appellants next contend the Debtors' actions in the Placid bankruptcy in obtaining court approval of the Indemnity Agreement constituted a written waiver of discharge within the meaning of 11 U.S.C. § 1141(d)(4). This section of the Code empowers the bankruptcy court to "approve a written waiver of discharge executed by the debtor after the order for relief" in a chapter 11 case. The question presented is one of law that this court reviews *de novo*.

Appellants argue the Debtors executed a written waiver within the meaning of § 1141(d)(4) because they signed the Indemnity Agreement on September 20, 1988 (prior to filing their individual chapter 11 petitions and thus prior to the orders for relief in their individual bankruptcy cases) and the Agreement was not "executed" within the meaning of § 1141(d)(4) until September 30, 1988 (subsequent to the orders for relief) when the bankruptcy court entered the Placid confirmation order and thereby specifically approved the Indemnity Agreement. Appellants also aver the Placid confirmation order itself makes the Indemnity Agreement non-dischargeable under § 1141(d)(4) because of the order's provisions precluding modification, impairment, or interference with the Placid Plan or any Plan document, including the Indemnity Agreement. The court declines to accept this reasoning.

■ First, appellants' argument confuses the concept of discharging all debts of a debtor with reaffirming a single debt. Section 1141(d)(4) permits a debtor to waive discharge post-petition. *See* 5 L. King, *Collier on Bankruptcy* § 1141.01[4][a] at 1141–10 (15th ed. 1990). The "waiver of discharge" of a single debt is accomplished by reaffirmation of the debt. *See id.* at

1141–11; *In re Di Pierro*, 69 B.R. 279, 282 (Bankr.W.D.Pa.1987). The Indemnity Agreement represents a single debt.

■ Second, the record below fails in several respects to show the Debtors reaffirmed post-petition their obligations under the Indemnity Agreement. 11 U.S.C. § 524(c) provides that a single debt may be reaffirmed. Section 524(d) prescribes the procedure that must be followed in the case of an individual bankruptcy. According to that Code provision, the bankruptcy court must hold a hearing at which the debtor personally appears. At the hearing the court is obligated to inform the debtor that the agreement is not required under the Bankruptcy Code, non-bankruptcy law, or under any agreement not made in accordance with the provisions of § 524(c); to advise the debtor of the legal effect and consequences of an agreement of the kind specified in § 524(c) and of a default under such an agreement; and to determine, if the consideration for the agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor, that the agreement the debtor desires to make does not impose an undue hardship on the debtor or a dependent of the debtor and is in the best interest of the debtor. "Both the structure of subsections (c) and (d) and their language demonstrate congressional intent that a reaffirmation agreement be vitiated unless it is brought to the attention of the bankruptcy court and the debtor is given an informed option to be free of the obligation." *Arnhold v. Kyrus*, 851 F.2d 738, 740 (4th Cir.1988). A reaffirmation has no legal effect if the debtor does not receive the required admonitions. *See id.; In re Roth*, 43 B.R. 484, 487–88 (N.D.Ill.1984); *In re Jackson*, 49 B.R. 298, 302 (Bankr.D. Kan.1985).

The slope of protection afforded by the Code would be slippery indeed if a creditor were allowed to piece together various actions and agreements and contend, in essence, that they comprise the functional equivalent of a § 524(c) reaffirmation. The

by the court, such holder changes such hold-

er's previous acceptance or rejection.

court finds the procedure Congress prescribed to be sufficiently explicit that it should be deemed to override the approach appellants urge in this case. Because the proper procedure was neither requested nor followed below, appellants cannot rely upon § 524(c).

## IV

Appellants finally urge reversal on the basis of related contentions that the bankruptcy court erred, first, in disallowing the Indemnity claims pursuant to 11 U.S.C. § 502(e)(1)(B), second, in estimating the value of the claims in the amount of one dollar and classifying them as general unsecured claims to be paid in that amount and otherwise discharged under the Joint Plans rather than permitting them to be passed-through unimpaired by plan confirmation, and third, in discharging appellants' claims while leaving unaffected by its order an identical claim of MHT, another lender bank and co-proponent of the Joint Plans.[8]

### A

■■■ Appellants' assertion that the bankruptcy court erred by disallowing their Indemnity claims pursuant to § 502(e)(1)(B)[9] is resolved by the determination that the court below *allowed* rather than *disallowed* the claims.

Appellants correctly point out that the bankruptcy court signed a December 15, 1989 order in Herbert's case styled as an "order sustaining proponents' objections to the indemnity claims of the 'Placid Banks.'" The bankruptcy judge edited the form of order, however, to reflect the finding that the claims are "not allowable under the provisions of 11 U.S.C. § 502(e)(1)(B), except in the nominal

amount of one (1) dollar." The judge also altered the form submission to state the claims "are allowed in the amount of 1 dollar for all purposes in connection with the Proponents' Joint Plan of Reorganization." Notwithstanding the order's references to § 502(e)(1)(B), the document adequately reflects the bankruptcy court's intent to allow appellants' Indemnity claims and value them at one dollar. The court's January 11, 1990 order in Nelson's case makes no explicit reference to § 502(e)(1)(B) and expressly provides, "[b]ased upon the absence of any request for estimation, as well as the probability of any recovery, the amount of the claims of the individual Placid Banks herein shall be allowed at one dollar ($1.00) per claim, except to the extent objections to any such claims have been or may be sustained on another basis."

The court concludes the bankruptcy court did not disallow appellants' Indemnity claims. Its order could not therefore have erroneously applied § 502(e)(1)(B).

### B

■■■ Appellants also contend the bankruptcy court failed to provide for the proper treatment of their Indemnity claims. They argue the court erred in estimating and liquidating the claims because it "was apparently of the view that contingent claims, such as Appellants' Indemnity claim, must always be liquidated and disposed of." Appellants Br. at 23. Appellants cite this court to two instances in which courts have permitted contingent claims to pass-through bankruptcy unimpaired by confirmation.[10] The implicit, but unexpressed, gravamen of this argument is that the bankruptcy court should have done likewise in the present cases but "apparent-

---

**8.** The assertion that MHT was given preferential treatment is refuted by the record, which reflects MHT's Indemnity claims were disallowed. The court does not consider this contention further.

**9.** 11 U.S.C. § 502(e)(1)(B):

Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity

that is liable with the debtor on or has secured, the claim of a creditor, to the extent that— ...

such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

**10.** *Bittner v. Borne Chem. Co., Inc.,* 691 F.2d 134 (3d Cir.1982); *In re Continental Airlines Corp.,* 60 B.R. 903 (Bankr.S.D.Tex.1986).

ly" viewed itself as bound by law to follow the course it did.

It must be remembered that appellants purport by this appeal to challenge only the legal conclusions of the bankruptcy court. No legal conclusion of the type appellants speculate may have been reached by the bankruptcy court is disclosed in their brief. And this court cannot say the court below erred as a matter of law in classifying and estimating appellants' claims rather than passing them through unimpaired by confirmation.[11]

### C

██ Appellants' challenge to the classification of their Indemnity claims similarly presents no basis to overturn the bankruptcy court's orders. 11 U.S.C. § 1122(a) requires, with an exception not relevant here, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." The entirety of appellants' argument is as follows:

> The Joint Plans also fail to provide separate classification for Appellants' Indemnity claims in violation of Section 1122(a), which mandates that only substantially similar claims be placed in the same class. Appellants' Indemnity claims are not "substantially similar" to the claims

of other general unsecured creditors; rather, they are unique and thus entitled to separate classification and treatment from other general unsecured creditors. Treatment of the Indemnity should be governed by the terms of the Placid Confirmation Order; and the Indemnity claims should not be estimated for distribution purposes under Section 502(c). Consequently, the Bankruptcy Court's treatment of the Indemnity claims is contrary to Section 1122(a).

Appellants' Br. at 23–24.

The court cannot discern from this conclusory reasoning that the bankruptcy court erred as a matter of law in its classification decision. Even if appellants had challenged the factual findings of the bankruptcy court, a deferential review of the record reflects appellants' Indemnity claims could properly have been considered general unsecured claims that arise from a prepetition contract.

### V

██ Appellees move the court to award appellate costs, expenses, and attorney's fees for an appeal lacking a basis in law or fact. Although the appeal was not meritorious, the court finds no basis for imposing appellate sanctions and declines to do so.

---

11. In one of their reply briefs appellants argue the bankruptcy court abused its discretion in imposing a value of one dollar on their Indemnity claims. Appellants Rep.Br. (to Debtors Briefs) at 12–13. This court will not consider arguments presented for the first time in a reply brief, *see Senior Unsecured Creditors' Comm. v. FDIC,* 749 F.Supp. 758, 772 (N.D.Tex.1990), or matters inadequately presented so as to have been deemed not briefed. *See Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan,* 76 B.R. 563, 572 n. 15 (N.D.Tex.1987), *aff'd,* 862 F.2d 513 (5th Cir.1988).

Even if the court did consider the argument, the record below reveals no basis for reversal. The bankruptcy court conducted a hearing at which it considered, among other questions, objections to appellants' Indemnity claims. When appellants' position (and those of other indemnified banks) was presented to the bankruptcy court, Nelson's counsel informed the court the claims could be estimated, Dec. 15, 1989 Tr. at 87–88, and should be estimated "to be zero." *Id.* at 88. He also argued the claims should be

"disallow[ed] ... in their entirety." *Id.* The bankruptcy court inquired of appellants' counsel the basis for appellants' claim. Although counsel did advise the court of a "continuing threat" by Huddleston on behalf of his children, *id.* at 90, he could not quantify with any precision the "odds in those lawsuits that the bank would be hurt." *Id.* at 90–91 (question mark omitted). In response to specific questioning by the bankruptcy court regarding the odds of a recovery that would trigger a right of indemnification, appellants' counsel stated, "And this may never come to pass. That's why they're incapable of estimation. We all admit that." *Id.* at 92. At the conclusion of this exchange, Nelson's counsel specifically inquired of the bankruptcy court whether the banks were "going to present any evidence as to any potential claim they may have." *Id.* at 93. The record does not reflect the banks adduced any evidence that would permit this court to conclude the bankruptcy court abused its discretion by estimating the claims at one dollar.

The four orders of the bankruptcy court that are the subject of these consolidated appeals are

AFFIRMED.