**In re VICTORIA STATION INCORPORATED, Debtor.**

**WILLAMETTE WATERFRONT, LTD., Appellant,**

v.

**VICTORIA STATION INCORPORATED, and Jerry W. Marlow, Esq., Appellee.**

**No. 88–15047.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1989.

Decided May 22, 1989.

Thomas W. Sondag, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for appellant.

Isaac M. Pachulski and Jeffrey C. Krause, Stutman, Treister & Glatt, P.C., Los Angeles, Cal., for appellee.

Before HUG, HALL and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellee-debtor Victoria Station Incorporated and its affiliates operate a chain of boxcar restaurants which filed voluntary petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, on May 20, 1986. 11 U.S.C. § 365(d)(4) obligates a debtor to assume or reject a lease on nonresidential real property no later than 60 days after the petition's filing unless the debtor moves within this 60–day period for an extension of time. Victoria Station filed a timely motion for an extension of time in which to assume or reject leases on 72 properties, including the property owned by appellant-lessor Willamette Waterfront,

Ltd. ("Willamette") in Oregon. The bankruptcy court granted an extension until December 31, 1986, but debtor moved for a second extension of time until March 31, 1987, which the bankruptcy court granted on December 22, 1986. This appeal centers on the validity under section 365(d)(4) of this second extension of time.

## I

██ Willamette appeals from the Bankruptcy Appellate Panel's ("BAP") decision affirming the bankruptcy court's final order entered on May 21, 1987, approving the assumption and assignment of Willamette's lease. The bankruptcy court had jurisdiction under 28 U.S.C. § 157. Willamette appealed to the BAP, which affirmed on June 23, 1988, 88 B.R. 231 (1988). Willamette filed its notice of appeal on July 22, 1988. A final order addressing the assumption of a lease pursuant to section 365(d)(4) is reviewable as a separate and discrete matter. *In re Victoria Station, Inc.*, 840 F.2d 682, 683–84 (9th Cir.1988).

## II

██ We interpret section 365(d)(4) de novo. *See In re Southwest Aircraft Services, Inc.*, 831 F.2d 848, 849 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988). Similarly, we interpret the demands of the due process clause de novo. *See Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988).

## III

Victoria Station mailed a copy of its initial May 28, 1986, motion for extension of time to Willamette at an incorrect address. The letter was returned "addressee unknown." The bankruptcy court granted debtor's motion, extending the time for it to assume or reject the leases until December 31, 1986, without prejudice to any party to move to shorten or extend the time. Willamette became aware of the order granting the extension of time, believing it to extend the time until December 20, 1986.

Willamette did not question the scope of the bankruptcy court's extension order.

Victoria Station moved for a second extension of time on November 24, 1986, which the court heard on December 22, 1986. Victoria Station did not attempt to serve Willamette with a copy of its second motion for an extension of time. In the interim, Willamette had served by mail on December 12, 1986, its own motion to compel assumption or rejection of the lease by December 20, 1986. Victoria Station received this motion before the scheduled hearing on its own motion for an extension of time, but did not inform Willamette of the upcoming hearing. In addition, debtor continued to make rent payments to Willamette at a correct address.

The bankruptcy court granted Victoria Station's second motion for an extension of time at a hearing unattended by Willamette. The court enlarged the time for assumption or rejection until March 31, 1987, but as to the landlords who appeared at the hearing and objected to an extension, provided that no further extension would be granted. Willamette subsequently refused debtor's offer to be included among the landlords entitled to have their leases definitely decided upon by March 31, 1987.

Willamette's counsel learned of this second extension and moved to vacate on December 24, 1986. On February 4, 1987, the bankruptcy court held a telephone conference and rejected Willamette's motion to vacate, finding that it had the power to grant an *ex parte* extension of time. On February 27, 1987, Victoria Station filed for a third extension of time to assume or reject the leases, requesting until June 30, 1987. Meanwhile, Willamette withdrew its motion to compel, which the court had set for a hearing on March 6, 1987.

Willamette opposed debtor's third motion for an extension of time on the grounds that its lease should have been deemed abandoned on December 31, 1986. Willamette argued that the bankruptcy court did not have the power to grant consecutive extensions of time. The court granted the requested third extension of time. On April 7, 1987, debtor moved to assume the

lease and to assign it to appellee Jerry Marlow. The court approved the assumption and assignment of the lease on May 21, 1987. Marlow is prepared to pay the estate $265,000 to assume the lease.

## IV

Willamette made two principal arguments to the BAP which it renews on appeal.[1] First, it argues that the second and third extensions of time for debtor to assume or reject its lease were impermissible under section 365(d)(4), because they were requested more than 60 days after the order for relief.[2] Second, Willamette argues that the second extension was void as violating its due process right to notice and an opportunity to be heard on the issue. Consequently, Willamette contends that the lease should be deemed rejected on December 31, 1986, the expiration of the only valid extension of time.

## A

Section 365(d)(4) provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

Willamette contends that section 365(d)(4) unambiguously prohibits a motion for an extension of time filed more than 60 days after a debtor files for Chapter 11 protection. In other words, Willamette's position is that section 365(d)(4) permits a bankruptcy judge to grant only one extension of time where a debtor moves for his second extension after the first 60 days.

In the *Southwest* case, the court addressed the question whether the clause "within such 60–day period" modified "for cause" or "fixes." The debtor in *Southwest* had moved for an extension of time within 60 days of filing for Chapter 11 protection, but the bankruptcy court had not heard and ruled upon the motion within this 60–day period. *Southwest,* 831 F.2d at 849. The bankruptcy judge and the BAP concluded that the court had no power to grant the extension because section 365(d)(4) required the bankruptcy court to fix the period of extension within 60 days. The Ninth Circuit reversed, holding that section 365(d)(4) only requires that cause for an extension arise within the first 60 days. *Southwest,* 831 F.2d at 853. The bankruptcy court can hear and rule on the motion any time thereafter. *Id.*

The holding of the *Southwest* court is not controlling because the debtor did not move for a second extension after the first 60 days, but its rationale is instructive. The court found that "the meaning of the words of section 365(d)(4) is not entirely clear." *Id.* at 849. Finding the statute ambiguous, the court turned to its legislative history. The court noted that before 1984, debtors in Chapter 11 had no fixed deadline to assume or reject a lease, but that any party could move for a time limit. Congress enacted section 365(d)(4) to address its concern about situations confronting shopping centers, where mall operators faced extended periods of vacancy due to a debtor's failure to decide whether to assume or reject the lease.

The *Southwest* court found no legislative history specifically stating that the bankruptcy court need not rule on a motion for an extension of time within 60 days. But the court stated that the landlord's proposed reading of the section would produce "arbitrary and fortuitous results." *Id.* at 852. The court found the debtor's interpretation "a more reasonable construction—a

---

1. Debtor does not renew its argument made before the BAP that Willamette's appeal is moot. The BAP's rejection of this challenge is persuasive. *See* BAP Opinion at 7–9.

2. The debtor's Chapter 11 petition constitutes an order for relief. 11 U.S.C § 301.

construction that is more consistent with the normal concepts that govern the functioning of the judiciary." *Id.* at 850. Accordingly, the court adopted a presumption that it would construe section 365(d)(4) to further the rehabilitative goals of the Code absent legislative history "clearly indicating" a contrary intention. *Id.* at 851. Failing to uncover such a clear intention to the contrary, the court adopted "[t]his more liberal reading of the statute [that] would allow the bankruptcy courts to operate with greater freedom and flexibility." *Id.*

The court in a case related to this appeal, *In re Victoria Station, Inc.*, 840 F.2d 682 (9th Cir.1988), recently followed the *Southwest* court's practical construction of section 365(d)(4). The *Southwest* court stated that "implicitly the debtor must file its motion to show cause within that [60–day] period." *Southwest*, 831 F.2d at 850. The *Victoria Station* court held that the debtor had "made" a timely motion for an extension of time where it mailed the motion on the last timely day, although the motion was not filed until three days later, apparently when the clerk's office received the motion in the mail. *Id.* at 684. The court followed the *Southwest* court's flexible approach, stating that "because bankruptcy courts are courts of equity, they are compelled to disfavor a lease forfeiture that would imperil the debtor's reorganization and impede rehabilitative goals." *Id.* This presumption against inferring a lease forfeiture guides our study of section 365(d)(4).

### 2

While section 365(d)(4)'s legislative history is ambiguous, it points in debtor's favor. Willamette correctly argues that Congress enacted the 60–day period to prompt the debtor's decision to assume or reject a lease. But Congress also clearly permitted the bankruptcy judge to grant a motion for an extension filed within the first 60 days *without limitation* if the debtor demonstrates cause for doing so. Consequently,

Congress did not intend to force a debtor to decide upon a lease irrespective of the merits of delay. While not conclusive, the legislative history identified by Willamette is somewhat favorable. The Senate Report refers to the bankruptcy court's power "to grant extensions for cause...." S.Rep. No. 98–65, 98th Cong., 1st Sess. 38 (1983).[3]

### 3

■ The *Southwest* court concluded that absent a dispositive legislative history, it would adopt a rule-of-reason construction of section 365(d)(4). We find the debtor's interpretation of section 365(d)(4) to be the more reasonable, and that the legislative history fails to reveal a clear indication to the contrary.

The *Southwest* court adopted an interpretation of section 365(d)(4) that allowed bankruptcy judges more freedom and flexibility. The debtor's interpretation clearly affords a bankruptcy judge more flexibility to tailor the extension of time to the cause justifying it. *See* L. King, *Collier on Bankruptcy* § 365.03[2], at 365–31 (15th ed. 1987 rev.) (rejecting "excessive rigidity" and interpreting section 365(d)(4) as permitting additional extensions) (cited by the BAP at 14 n. 8).

■ Significantly, section 365(d)(4) fails to set any limit on the period of time a bankruptcy court can extend a debtor's ability to assume or reject a lease for a motion filed within the first 60 days. The BAP noted that a single extension of 120 days does not prejudice a lessor more than two separate extensions of time for 60 days each. Indeed, it found the latter preferable because it obligates the debtor to demonstrate cause for a continued extension at the close of the first period. The BAP also rejected Willamette's interpretation out of concern that it might prompt a bankruptcy judge to grant a longer extension of time than strictly necessary. Willamette argues that we should not presume that bankruptcy court judges will abdicate their judicial

---

**3.** This follows a sentence which states that a debtor should generally make its decision within 60 days "in all but the most complicated cases." Consequently, it is somewhat unclear whether the report's reference to "extension" in the plural relates to several cases with one extension each, or a single case with multiple extensions.

obligation to insure that the entire extension is justified for cause. But a bankruptcy judge would not abdicate her duties by resolving doubts about cause in the debtor's favor were only one extension of time permitted.[4]

### 4

Willamette argues that section 365(d)(4) unambiguously prohibits a second motion for an extension of time filed after the first 60 days following bankruptcy. Section 365(d)(4), however, simply does not speak to the ability of a debtor to move for a second extension of time subsequent to the first 60–day period but within the extended period of time provided for assumption or rejection. While section 365(d)(4) requires a debtor to move upon cause for an extension within the first 60 days, Victoria Station did just that. Where cause arises within the first 60 days and the bankruptcy court enlarges the time for assumption or rejection beyond that period, section 365(d)(4) permits the court to grant further extensions if cause justifies delay.

In this case, Willamette does not contest the bankruptcy court's finding that cause justifying an extension arose in the first 60 days. Debtor maintained leases on six dozen properties. Before a debtor may assume a lease, section 365(b) obligates it to cure any default and compensate a lessor for pecuniary losses. These obligations always dictate a circumspect appraisal of the propriety of assumption or rejection. This is doubly true where this process is complicated by simultaneous evaluations of dozens of properties. The bankruptcy court in this case simply determined that the reasons for delay continued beyond the initial

extension period and properly granted consecutive extensions given the facts of this case.

### B

Willamette argues that the bankruptcy court's December 22, 1986, order granting debtor's second motion for an extension of time is invalid under the due process clause. Debtor did not serve Willamette with notice of the December 22, 1986, hearing, although debtor clearly could have. Willamette itself had served debtor on December 12, 1986, with a copy of its motion to compel assumption or rejection. Consequently, debtor had actual knowledge of Willamette's counsel's identity before the hearing on its motion for an extension of time. In addition, debtor had been mailing rent payments to Willamette's correct address.[5]

The bankruptcy rules do not require notice and a hearing before the court may grant a debtor's motion for an extension of time under section 365(d)(4). Willamette's sole argument is that the due process clause prohibits an order enlarging the time for debtor to assume or reject the lease without affording it notice and an opportunity to be heard.

Debtor cites a decision construing section 365's predecessor, *Texas & N.O.R. Co. v. Phillips*, 196 F.2d 692, 694 (5th Cir.1952), which rejected a lessor's claim of "procedural irregularities" centering on its failure to receive notice of the debtor's motion for an extension of time in which to assume or reject a lease. The lease itself required the debtor to assume or reject the lease within

---

**4.** Debtor also argues that irrespective of the propriety of the bankruptcy court's ruling, debtor should not be penalized because it reasonably relied upon the bankruptcy court's conclusion that section 365(d)(4) permits multiple motions for extensions of time. Presumably, had the bankruptcy court denied the motion for extension, debtor would have elected one way or the other by December 31, 1986, and not have permitted a "deemed" rejection under section 365(d)(4). A party's reliance upon a court's ruling under these circumstances precludes the forfeiture of a valuable right. *See Thompson v. I.N.S.,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964); *United Artists Corp. v. La Cage Aux*

*Folles, Inc.,* 771 F.2d 1265, 1267–70 (9th Cir. 1985); *Hernandez–Rivera v. Immigration & Naturalization,* 630 F.2d 1352, 1354–55 (9th Cir. 1980). Therefore, we find as an alternative holding that Victoria Station justifiably relied upon the bankruptcy court's ruling.

**5.** The record provides no excuse for debtor's failure to notify Willamette of its second motion for extension of time. Nothing we state should be interpreted to encourage this practice; we merely assess the obligations of due process, not professional courtesy.

a certain period of time, which was extended without notice to the lessor.

The *Phillips* decision relied in part upon an analogy to Fed.R.Civ.P. 6(b). *Phillips*, 196 F.2d at 694 n. 4. Rule 6(b) provides that "[w]hen ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before expiration of the period originally prescribed or as extended by a previous order...." The *Phillips* court found an order enlarging time to be "one entered in the routine administration of the estate," and therefore not requiring formal notice. *See also In re Semel*, 427 F.2d 651 (3d Cir.1970) (order extending time for filing objections to discharge valid although debtor did not receive notice of the extension).

The Supreme Court has emphasized that notice and an opportunity to be heard are required for a "proceeding which is to be accorded *finality.*" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (emphasis added). Debtor argues that an order extending time simply preserves the status quo and does not finally affect the parties' rights. In the context of this case, we agree.

■ Willamette's due process argument ultimately is premised on the theory that it had a valid property right in having its lease deemed rejected on December 31, 1986, of which it was deprived without notice and a hearing when the court enlarged the time for debtor to assume or reject the lease. We must reject this remarkable reading of section 365(d)(4) as granting a lessor a protectable property right expectation in having its lease deemed rejected at the close of the first extension of time. The Code permits the court to enlarge the time so long as cause justifies delay. We accept the *Phillips* court's rationale that an order extending the time for a debtor to assume or reject a lease merely preserves the status quo, and like orders pursuant to

Rule 6(b), is entered in the routine administration of the court.

AFFIRMED.