**In re REPH ACQUISITION COMPANY and Republic Health Corporation, Debtors.**

**REPUBLIC HEALTH CORPORATION,**
Movant-appellant-cross-appellee,

v.

**CORAL GABLES, LTD., Nonmovant-appellee-cross-appellant.**

**REPUBLIC HEALTH CORPORATION and Coral Gables Hospital, Inc.,**
Plaintiffs-appellees,

v.

**CORAL GABLES, LTD.,**
Defendant-appellant.

Civ. A. Nos. CA3–90–2407–D, CA3–90–2408–D. Bankruptcy Nos. 389–38126–SAF–11, 389–38127–SAF–11. Adv. No. 390–3210.

United States District Court, N.D. Texas, Dallas Division.

Dec. 17, 1991.

Mark E. MacDonald (argued), Stephen C. Morton, and Daren W. Perkins of Johnson & Gibbs, P.C., Dallas, Tex., for Republic Health Corp. and Coral Gables Hosp., Inc.

Dean M. Gandy, Marvin R. Mohney, and J. Christopher Luna (argued) of Akin, Gump, Strauss, Hauer & Feld, Brian S. Book, Thomas H. Grace, and Michelle E. Shriro of Arter & Hadden, Dallas, Tex., for Coral Gables, Ltd.

FITZWATER, District Judge:

These are appeals and a cross-appeal from orders of the bankruptcy court denying a motion under 11 U.S.C. § 365(d)(4) to assume an unexpired nonresidential lease and granting a permanent injunction precluding the lessor from continuing a state court eviction action filed post-petition and from seeking to terminate the lease as to a nonbankrupt co-lessee based upon the bankrupt's rejection of the lease and bankruptcy filing. Finding no reversible error in the bankruptcy court's denial of the motion to assume, the court AFFIRMS the order. Concluding the bankruptcy court did not err in enjoining the eviction action but erred in permanently enjoining future litigation, the court AFFIRMS in part and REVERSES in part the injunction order.

## I

On December 15, 1989 chapter 11 debtors Republic Health Corporation ("RHC") and REPH Acquisition Company ("REPH") filed for bankruptcy protection. On December 20, 1989 they submitted a

prepackaged[1] chapter 11 joint plan of reorganization (the "Joint Plan").[2] The Joint Plan was eventually approved and a confirmation order entered on April 17, 1990, to become effective April 30, 1990. One provision of the Joint Plan provided that RHC assumed all unexpired leases, unless nonassumable under applicable bankruptcy law, or expressly rejected by REPH or RHC on or before the effective date of the Joint Plan.

Of several appeals taken from these bankruptcies, only these two remain. Both pertain to a dispute over a Coral Gables, Florida hospital lease ("the Hospital Lease"). In 1982 RHC agreed to purchase certain assets from Hospital Corporation of America ("HCA"). Pursuant to the agreement, HCA contracted to transfer hospital facilities located throughout the United States to subsidiaries to be formed by RHC. One asset was the property interest in question: a lease to a hospital located in Coral Gables, Florida. At the time, the leasehold estate was owned by an HCA subsidiary. RHC became an assignee of the subsidiary's rights under the Hospital Lease at the time of the 1982 acquisition. A wholly-owned subsidiary of RHC, Coral Gables Hospital, Inc. ("Coral Gables Hospital"), was formed to hold title to the Hospital Lease. Coral Gables, Ltd. ("CGL"), a New Jersey limited partnership, was the landlord and lessor under the lease.

On December 30, 1982 several parties, including RHC, Coral Gables Hospital, and CGL, signed a document[3] in connection with the transaction. RHC and Coral Gables Hospital viewed it as an estoppel letter executed as a matter of customary practice in connection with the sale of long-term ground leases. The bankruptcy court below relied upon provisions in the document that stated CGL was the lessor and RHC and Coral Gables Hospital were the lessees, to hold RHC and Coral Gables Hospital had agreed they were co-lessees under the Hospital Lease. See May 30, 1990 Tr. at 95–96. The court also found that the signatories to the agreement fully intended this arrangement. See id. at 97. The parties do not challenge these holdings on appeal.

In 1989 Coral Gables Hospital determined it was necessary to make life and safety code improvements to the hospital. The Hospital Lease required CGL's consent and provided such consent could not be unreasonably withheld. The parties negotiated over a period of several months concerning the financial aspects of the improvements. In August 1989 CGL learned of RHC's attempts to restructure its financial obligations. No agreement regarding the improvements had been reached as of December 15, 1989, when REPH and RHC filed for bankruptcy.[4]

On March 29, 1990 CGL filed in Florida county court an eviction action against RHC and Coral Gables Hospital, seeking to remove them from the leased premises.[5] CGL alleged, inter alia, that RHC had filed for bankruptcy protection and had failed to assume the Hospital Lease, and that the lease was deemed rejected pursuant to § 365(d)(4). CGL also averred its

---

1. A "prepackaged" plan is specifically contemplated by the Bankruptcy Code. See In re TS Indus., Inc., 117 B.R. 682, 688 (Bankr.D.Utah 1990); In re Colonial Ford, Inc., 24 B.R. 1014, 1017 (Bankr.D.Utah 1982). A prepackaged plan is "negotiated between a debtor and its creditors prior to a Chapter 11 filing." TS Industries, 117 B.R. at 688–89. Such plans are considered preferable in most instances because they are generally well thought-out and reduce the time and expense of litigation, thereby allowing the debtor to commence its reorganized operations as soon as possible. Id. at 689. See Trost, Business Reorganizations Under Chapter 11 of the New Bankruptcy Code, 34 Bus.Law. 1309, 1324–25 (1979) (discussing prepackaged chapter 11 plans).

2. The bankruptcies were ordered jointly administered.

3. The document was signed December 30, 1982 and took effect on December 31, 1982.

4. On January 2, 1990 Coral Gables Hospital filed a complaint in Florida district court requesting a declaratory judgment and other relief on the ground that CGL was violating the Hospital Lease by unreasonably withholding its consent to the proposed hospital improvements.

5. Coral Gables, Ltd. v. Coral Gables Hospital, Inc. and Republic Health Corp., Case No. 90–1959–CC–25, in the County Court in and for Dade County, Florida (Civil Division).

eviction action could not have been commenced prepetition and the automatic stay was therefore inapplicable.

Eight days later, on April 6, 1990, RHC and Coral Gables Hospital countered by initiating an adversary proceeding in the court below. Coral Gables Hospital alleged it was the sole lessee under the Hospital Lease and that § 365(d)(4) did not apply because Coral Gables Hospital was not a bankruptcy debtor. Coral Gables Hospital also averred that CGL had waived the time period prescribed by § 365(d)(4) by accepting rent payments after the period had expired. RHC and Coral Gables Hospital asked the bankruptcy court pursuant to § 105 to stay and enjoin prosecution of the county court litigation so that the lease assumption issue could be decided in the bankruptcy court.[6] The parties also sought recovery of damages based on CGL's conduct in connection with the 1986 leveraged buy-out of RHC and challenged, as in an earlier-filed Florida district court suit, *see supra* n. 4, CGL's failure to consent to improvements to the leasehold.

Also on April 6, 1990 RHC filed with the bankruptcy court a motion to assume interest in unexpired lease. RHC stated it did not believe it was a lessee under the Hospital Lease within the meaning of § 365(d)(4) or that it had any interest in the Hospital Lease or obligations or liability thereunder. It also alleged that "in an abundance of caution, [RHC] hereby elects to assume whatever interest it may subsequently be determined to have in the [Hospital] Lease." Mot. to Assume at 2–3.[7] RHC also conceded the time period under § 365(d)(4) for assuming or rejecting an unexpired lease of real property had expired, Mot. to Assume at 3, but alleged CGL's acceptance of rent *after the expiration* of the period constituted a waiver of rights. *Id.*

On May 29 and 30, 1990 the bankruptcy court convened a joint hearing of the RHC/Coral Gables Hospital adversary proceeding and RHC motion to assume unexpired lease. In decisions rendered May 30, 1990 and reduced to writing in orders signed July 25, 1990,[8] the bankruptcy court denied RHC's motion to assume interest in unexpired lease but held that RHC's surrender of possession had no effect on Coral Gables Hospital's right to remain in possession of the leasehold premises and did not cause the termination of the lease as to Coral Gables Hospital, and that contrary state property laws were preempted. In the adversary proceeding, the bankruptcy court permanently enjoined CGL from commencing and continuing any litigation seeking to terminate the Hospital Lease based on the RHC bankruptcy filing or on the fact of RHC's bankruptcy rejection of its interest in the Hospital Lease.

In No. 90–2407 RHC appeals the order denying its motion to assume interest in unexpired lease. CGL cross-appeals the order to the extent it holds RHC's surrender of possession of the leased premises has no effect on the rights of Coral Gables Hospital to remain in possession and does not cause the termination of the lease as to Coral Gables Hospital, and to the extent the order holds contrary state property laws are preempted.

In No. 90–2408 CGL appeals the bankruptcy court's order in the adversary proceeding permanently enjoining it from commencing or continuing litigation against Coral Gables Hospital on the basis of RHC's bankruptcy and deemed rejection of its interest in the Hospital Lease.

## II

The court turns first to No. 90–2407, RHC's appeal of the order denying its mo-

---

**6.** According to the record, this action was removed to the Southern District of Florida bankruptcy court.

**7.** The record is consistent with this allegation. RHC did not list the Hospital Lease in its schedule of executory contracts and leases, did not include the lease as property of the RHC bankruptcy estate, and did not include CGL on its list of creditors or provide CGL with formal notice

of the bankruptcy filing and bankruptcy proceedings. RHC did timely assume several executory contracts and unexpired leases other than the Hospital Lease.

**8.** The orders were entered on the docket on July 26, 1990. For clarity, the court refers to them by the date they were signed.

tion to assume interest in unexpired lease and CGL's cross-appeal.

The record is undisputed that RHC did not file a motion pursuant to § 365(d)(4)[9] to assume the unexpired Hospital Lease. RHC did not consider itself to be a party to the lease and so argued in the bankruptcy court. The court below held to the contrary. It found on the basis of the parties' intentions—as reflected in the document executed by CGL, RHC, and Coral Gables Hospital on December 30, 1982—that RHC and Coral Gables Hospital were co-lessees. As noted, RHC does not challenge this finding on appeal. Because RHC did not view itself as a co-lessee, it did not move to assume the Hospital Lease when it timely filed other such motions in its chapter 11 proceeding. On April 6, 1990, after the time period for filing such a motion had expired, RHC filed the motion to assume, doing so "in an abundance of caution." Mot. to Assume at 2; Appellant Br. at 37.[10] The bankruptcy court denied the motion as untimely, finding RHC neither had filed the motion within 60 days of the order for relief, as required by § 365(d)(4), nor had sought and obtained additional time to do so. July 25, 1990 Order at ¶¶ 8–9. The court therefore concluded RHC's interest in the Hospital Lease was deemed rejected. *Id.* at ¶ 13.

### A

■ On appeal, RHC asks the court to hold that its proposed reorganization plan satisfied the requirements of a § 365(d)(4)

motion to assume or constituted the equivalent of a request for an extension of time to file an assumption motion, thereby making RHC's April 6 motion timely filed. RHC relies upon 11 U.S.C. § 1123(b)[11] and Fed.R.Bankr.P. 6006(a)[12] as authority to excuse a formal motion when an unexpired lease is assumed as part of a proposed plan of reorganization. Noting a split of authority regarding whether a formal motion to assume a lease is necessary, RHC urges that § 1123(b) and Rule 6006(a) support the approach RHC took in the present case. RHC then argues that its proposed plan complied with § 365(d)(4) because it was filed within 60 days of the order of relief and contained a proviso whereby the reorganized RHC assumed all unexpired leases (other than those made nonassumable by § 365(c) of the Code) unless RHC expressly rejected them on or before the Joint Plan's effective date. RHC posits that because it did not expressly reject the Hospital Lease as of plan confirmation, it assumed the interest of co-lessee that the bankruptcy court concluded it had.

Assuming, without deciding, that § 1123(b) and Rule 6006(a) can be interpreted to permit the procedure advocated by RHC, the court nevertheless rejects its application here. In the present case, the bankruptcy court found that RHC failed to notify CGL of the contents of the proposed Joint Plan. *See* July 25, 1990 Order at ¶ 12 ("RHC did not provide timely notice to [CGL] of its intent to assume the [Hospital Lease]"; May 30, 1990 Tr. at 99 (RHC did

---

**9.** 11 U.S.C. § 365(d)(4):
  Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

**10.** References to briefing in section II of this opinion are to the briefs filed in No. 90–2407. References to briefing in section IV are to the briefs filed in No. 90–2408. The parties are designated according to their respective capacities in each appeal.

**11.** 11 U.S.C. § 1123(b):
  Subject to subsection (a) of this section, a plan may—
    (1) impair or leave unimpaired any class of claims, secured or unsecured, or of interests;
    (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

**12.** Rule 6006(a):
  A proceeding to assume, reject, or assign an executory contract, unexpired lease, or time share interest, other than as part of a plan, is governed by Rule 9014.

not prove it circulated the Joint Plan to CGL; CGL should have been served and provided an opportunity to object); *id.* at 100 (no proof of notice to CGL under either Rule 2002(b) or 9014); *id.* at 101 (no proof CGL had notice of lease). Rule 6006(a) excuses the procedure that applies in contested matters when a proceeding to assume an unexpired lease is "part of a plan." Fairly interpreted, Rule 6006(a) does not eliminate the notice requirements applicable to a contested matter. Rule 9014, which governs contested matters not otherwise covered by the Bankruptcy Rules, requires that relief be requested on reasonable notice to the party against whom the relief is sought. The court holds that Rule 6006(a) implies a similar obligation upon a debtor [13] who seeks to assume an unexpired nonresidential lease by means of its proposed reorganization plan. This means that although the plan itself constitutes the act of assumption contemplated by § 365(d)(4), the lessor, as the party against whom the relief is sought, must be given reasonable notice of the debtor's intent. Even if Rule 6006(a) cannot be read to incorporate the notice requirement of Rule 9014, § 1125(b) of the Code plainly requires that the contents of a proposed reorganization plan be adequately disclosed.

RHC responds to the lack of notice issue in two ways, neither of which the court finds persuasive. RHC first contends CGL was not entitled to notice because it was not a creditor of RHC within the definition of § 101(a); it argues second that CGL had actual knowledge of RHC's intent to assume whatever interest RHC had in the Hospital Lease.

The court rejects RHC's first position as reflecting a misunderstanding of the interplay among § 365(d)(4), § 1123(b), and Rule 6006(a). RHC essentially asks the court to find a notice hiatus in the Code when an assumption request is contained in a proposed plan rather than separately made. The Code cannot be read this way. If the Code enables a plan proponent to assume an unexpired lease by means of the plan itself, the Code contemplates that any party against whom the relief is sought will receive at least the notice required by Rule 9014, if not by § 1125(b).

The court specifically rejects RHC's reliance upon *In re American Healthcare Management, Inc.*, 900 F.2d 827, 832 (5th Cir.1990), as inapposite to the present facts. On the basis of Rule 9006(b)(1) and circuit precedent, the panel in *American Healthcare* held that a court, without notice, may enlarge the time within which an act is required or allowed to be done. In the present case the bankruptcy court did not in fact order the period enlarged. It is therefore irrelevant that the court *could* have granted such relief without notice to CGL.

RHC's reliance upon *In re Victoria Station, Inc.*, 875 F.2d 1380 (9th Cir.1989), is similarly misplaced. That case, too, addressed whether notice of an extension request under § 365(d)(4) was required. *See* 875 F.2d at 1383 (appellant challenged second and third extensions of time as untimely and attacked second extension as void because granted without notice). *Victoria Station* expressly distinguished the facts before it from a proceeding that would be accorded finality, in which case it recognized notice and an opportunity to be heard were required. *See id.* at 1386. The holding of *Victoria Station* would only be pertinent to today's case if the bankruptcy court had granted RHC an extension of time without giving CGL notice of the request and extension.

The court also declines to accept RHC's second argument, that it properly assumed the Hospital Lease because CGL had actual knowledge both of RHC's chapter 11 proceedings and of its intentions to assume and perform the lease. RHC relies for this contention upon its view of facts below. RHC deems this evidence conclusive of CGL's knowledge of the contents of the proposed reorganization plan. *See* Appel-

---

**13.** Section 365(d)(4) refers explicitly to the "trustee." As a debtor in possession, RHC is treated for purposes of this section as a "trust-

ee." *See* 11 U.S.C. § 1107(a). When the court uses "debtor" in this opinion, it means debtor in possession or trustee, as applicable.

lant Br. at 26–28, 33–34. At no time, however, does it argue, much less demonstrate, to this court that the bankruptcy judge's contrary findings are clearly erroneous. In his oral findings of fact made pursuant to Fed.R.Bankr.P. 9014 and Fed.R.Civ.P. 52(a), the bankruptcy judge specifically found "[t]here is no proof before this Court that [RHC] circulated its plan to [CGL] prior to the filing." May 30, 1990 Tr. at 99; *see also id.* at 100–01. In his written order, the judge found RHC did not provide CGL timely notice of its intent to assume the Hospital Lease. July 25, 1990 Order at ¶ 12. It is fairly implied by these findings and from record evidence that CGL had no actual knowledge of the Joint Plan provision on which RHC now relies. *See Endrex Exploration Co. v. Pampell,* 97 B.R. 316, 323 (N.D.Tex.1989) (reviewing court may assume that trial court made implied finding consistent with general holding so long as the implied finding is supported by the evidence). By failing to contend in its brief that these findings are clearly erroneous, RHC has waived this argument. *See Yaquinto v. Greer,* 81 B.R. 870, 876 n. 4 (N.D.Tex.1988) (appellate court will not consider matter not briefed). Even if the argument is not waived, RHC has not established that the findings are clearly erroneous. It has not canvassed the hearing record with particularity, showing how the bankruptcy court lacked evidence, or impermissibly credited evidence, in support of the finding of no actual notice.

### B

■ RHC also argues that the Hospital Lease "rode through" the RHC bankruptcy, and is binding on the parties, because it was unaffected by the confirmed reorganization plan and was neither assumed nor rejected prior to or in the Joint Plan. RHC posits if there is any doubt whether the Hospital Lease was deemed rejected, the lease "should, at a minimum, 'ride through' the proceedings and thereby be binding" on RHC and CGL. Appellant Br. at 29. The court has no doubt that RHC failed to assume the lease within the time prescribed by § 365(d)(4). This argument therefore fails.

### C

■ RHC next contends § 365(d)(4) should be interpreted and applied in accordance with its primary purposes—to protect lessors from delay and uncertainty and to respond to harm caused by extended vacancies or partial operation of shopping center leases involving bankrupt tenants. RHC argues CGL has incurred no delay, harm, loss, disadvantage, or detriment and that § 365(d)(4) should not be employed to approve a substantial and unjust forfeiture in circumstances for which the Code provision was not intended. RHC attempts to justify why this result is unwarranted on the present facts, positing the Code should not effect a forfeiture where a prepackaged reorganization plan has moved through the bankruptcy process apace, thereby avoiding the delays that § 365(d)(4) seeks to eliminate; where the debtor has acted promptly and in good faith to assure the lessor of its intent to perform under the lease and to avoid forfeiture; and where the debtor is better off financially after reorganization than when the lease was originally executed.

This argument divides into two issues. The first is whether, as a matter of law, § 365(d)(4) permits the forfeiture of an unexpired nonresidential lease that is not timely assumed. The statute does so in unmistakable terms: if the debtor does not assume the lease, "then such lease is deemed rejected." The bankruptcy court did not err in holding RHC's interest was deemed rejected under § 365(d)(4). *See* July 25, 1990 Order at ¶ 13. The second is whether the bankruptcy court abused its discretion when it apparently viewed the equities differently than does RHC in its brief. *See* Appellant Br. at 31–35. This court cannot conclude there was such an abuse when the court below followed the clear terms of the relevant statute.

### D

RHC next urges that it should have the opportunity to remedy any technical defects in its notification of intent to assume

the Hospital Lease. For this contention it relies upon the well-settled principle that bankruptcy courts are courts of equity and are to be guided by equitable principles. RHC also cites this court to examples of bankruptcy court decisions in which courts have exercised equitable powers in a manner RHC contends should guide the resolution of the present case.

But RHC's broad and fervent appeal to equity is made to the wrong tribunal. It is the bankruptcy judge's province in the present case to weigh and resolve the equities; it is this appellate court's role to decide whether the bankruptcy judge abused his discretion. RHC has not advanced an abuse of discretion contention in support of this argument. The argument is therefore waived. Even had RHC done so, the court discerns no such abuse in the record below.

**E**

■ RHC finally argues CGL waived its right to assert that the Hospital Lease is deemed rejected because it accepted rent and undertook other actions with respect to the landlord-tenant relationship. RHC explains why principles of waiver should apply in the context of § 365(d)(4), *see* Appellant Br. 43–49, and why, in RHC's view, the elements of waiver are present in the instant case, *see id.* at 49. This argument presents no basis to reverse the bankruptcy court.

In the present case, the question whether CGL waived its right to rely upon RHC's deemed rejection of the Hospital Lease is one of fact. Because RHC had the burden of proof on the waiver issue, it was obligated to present evidence to the bankruptcy court to prove waiver and either obtain findings on waiver or complain of the bankruptcy court's failure to enter such findings. *See In re Hunt*, 124 B.R. 200, 206–07 (N.D.Tex.1991) (addressing equitable estoppel); *cf.* Fed.R.Bankr.P. 7008(a) (adopting Fed.R.Civ.P. 8 in adversary proceedings); Fed.R.Civ.P. 8(c) (waiver is affirmative defense). The record below reflects that RHC raised the waiver argument in its motion to assume. *See* Mot. to Assume at

3. RHC's brief offers an abbreviated recitation of acts that it contends equate to waiver, but the brief contains no citation to the hearing record showing the evidence was presented to the bankruptcy judge. The bankruptcy judge's oral and written findings do not explicitly address waiver. RHC has not demonstrated that it presented waiver evidence to the bankruptcy court and obtained a finding on waiver. RHC does not complain of the bankruptcy judge's failure to make a waiver finding.

As framed, RHC's argument on appeal essentially asks this court to make a *de novo* determination regarding waiver. This is improper. Even if RHC could demonstrate to this court that it adduced evidence of waiver and obtained a contrary finding, it would be entitled to no greater level of review than under the deferential clearly erroneous standard. *See* Rule 8013. RHC has not established such error. The court therefore declines to hold that CGL waived its right to treat the Hospital Lease as rejected.

**III**

CGL cross-appeals the bankruptcy court's order denying RHC's motion to assume. On the basis of several arguments, many of which overlap issues presented in No. 90–2408, CGL contends the bankruptcy court erred when it entered findings and conclusions that are inconsistent with a right CGL posits it has to terminate the Hospital Lease by reason of RHC's failure to assume the lease. In the context of the order denying motion to assume interest in unexpired lease, these holdings are *dicta* and present no basis to disturb the order.

■ The motion to assume was filed by RHC. CGL did not file its own motion requesting relief from the court. It intended, as it apparently does now, to obtain a Florida county court remedy by way of an eviction action. That the bankruptcy court, in entering its dispositive holding that RHC did not assume the Hospital Lease, augmented the decision with *dicta*, does not present a basis to reverse the bankruptcy court. Indeed, in examining what CGL seeks by its appeal in No. 90–2407, it is

apparent CGL presents no basis for obtaining relief from this court. CGL prays that the court affirm the denial of the motion to assume but that it reverse the rulings that the Hospital Lease has not terminated and that RHC's bankruptcy and rejection of the Hospital Lease may not be raised by CGL against Coral Gables Hospital. This court will not by way of appeal modify specific bankruptcy court holdings that are unnecessary to its decision.

CGL also alleges as error the bankruptcy court's failure to hold that RHC's rejection and surrender of the leased premises permits CGL to terminate the lease. In the context of RHC's motion to assume, however, this finding is also unnecessary to denial of RHC's motion.

Neither RHC nor CGL has presented a basis to reverse or modify the order denying RHC's motion to assume interest in unexpired lease and the order is affirmed.

## IV

The court now turns to the appeal in No. 90–2408. CGL appeals a permanent injunction that precludes it "from commencing or continuing any litigation seeking to terminate its lease with [Coral Gables Hospital], based on the bankruptcy filing of [RHC] or on the fact of the bankruptcy rejection of [RHC's] interest in the [Hospital Lease]." July 25, 1990 Order at 3.

In oral findings and conclusions, supplemented by its written order, the bankruptcy court held Coral Gables Hospital remains a lessee under the Hospital Lease; RHC's bankruptcy filing cannot be grounds to terminate the lease; rejection of the lease does not, as a matter of federal bankruptcy law, cause the termination of the lease as to Coral Gables Hospital; and CGL's Florida county court eviction action would be declared void if still pending in county court or dismissed if removed to and pending in bankruptcy court.

CGL challenges the injunction essentially on three grounds, contending the bankruptcy court lacked jurisdiction and authority to enter the injunction; the injunction was erroneously issued because RHC and Coral Gables Hospital had an adequate remedy at law; and the Florida eviction action should not have been declared void.

### A

The court begins by addressing the standard of appellate review. Appellees RHC and Coral Gables Hospital argue the bankruptcy court's "finding of jurisdiction" and "issuance of an injunction" are subject to review for abuse of discretion. Appellees Br. at 2. The court disagrees.

■ The question whether a court has subject matter jurisdiction is a question of law. *See, e.g., Abbott Bldg. Corp., Inc. v. United States*, 951 F.2d 198, 200 (9th Cir. 1991). It is therefore reviewed *de novo*. *Id.; see Hunt*, 124 B.R. at 208 (district court reviews question of law *de novo*).

■ A permanent injunction is reviewed for clearly erroneous fact findings, errors of law, or abuse of discretion. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir.1990) (preliminary injunction standard of review).[14] "Each element of the injunction analysis typically involves questions of fact and of law. The factual components of the decision are subject to a clearly-erroneous standard of review. Legal conclusions, of course, are subject to broad review and will be reversed if incorrect." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989) (preliminary injunction case) (citations and internal quotation marks omitted). Properly understood, the abuse of discretion standard applies to that vast area of equitable choice that remains to the chancellor who has properly applied the

---

**14.** Even in the more deferential context of a preliminary injunction, the appellate court conducts *de novo* review where the question is one of law and the facts either are established or are of no controlling relevance. *See United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir.1990) (citing *Thorn-*

*burgh v. American College of Obstetricians*, 476 U.S. 747, 757, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986)); *Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir.1989) (denial of preliminary injunction on basis of erroneous legal principles is reviewed *de novo*).

law to fact findings that are not clearly erroneous.

## B

CGL first argues the bankruptcy court lacked the jurisdiction and authority to enter the permanent injunction. It contends the court was without jurisdiction because the Hospital Lease, once deemed rejected, was no longer part of the RHC bankruptcy estate.[15]

RHC and Coral Gables Hospital filed a complaint for the purpose, among others, of obtaining an order permanently enjoining CGL from prosecuting the state court eviction action in the event it was not removed to bankruptcy court. CGL moved to dismiss the complaint, challenging the bankruptcy court's jurisdiction over a contractual dispute between two private parties that were not in bankruptcy. CGL preserved the jurisdictional challenge by stating in the pretrial order, *inter alia*, that its contested issues of fact and law were subject to its motion to dismiss, *see* PTO at 11, and at the hearing that it did not waive any argument regarding jurisdiction, *see* May 29, 1990 Tr. Vol. I at 22.

■ There is little doubt that the adversary proceeding was at least "related to" the RHC bankruptcy case within the meaning of 28 U.S.C. § 1334(b).[16] When a proceeding is related to a case under title 11, the district court has jurisdiction over it. *In re Majestic Energy Corp.*, 835 F.2d 87, 89 (5th Cir.1988). The district court, as this court has done by miscellaneous order, can refer all bankruptcy matters to a bankruptcy judge. The specific nature of the proceeding does not affect the jurisdiction of the district court, but it does impact the power of the bankruptcy court. If a case is "core," the bankruptcy court may enter a final judgment; if it is "non-core," the

bankruptcy court may only enter proposed findings and conclusions which, in response to timely objections, the district court must consider *de novo*. *Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan*, 76 B.R. 563, 567 (N.D.Tex.1987), *aff'd*, 862 F.2d 513 (5th Cir.1988). Thus, as the Fifth Circuit wrote in *Majestic Energy*, the question whether there is jurisdiction over bankruptcy cases and proceedings is determined by § 1334(b), "which is to be read as a broad grant of jurisdiction." 835 F.2d at 90. When jurisdiction is found, the court then looks to 28 U.S.C. § 157 to determine the extent to which the bankruptcy court, rather than the district court, can adjudicate the matter. *Id*. This turns on whether the matter is core or non-core. *Id*.

Whether a proceeding is related to a bankruptcy case is determined by examining "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). Therefore, if the outcome of the proceeding could alter the debtor's rights, liabilities, options, or freedom of action, there is "related to" jurisdiction. *See Pacor*, 743 F.2d at 994. CGL attempts to distinguish between the bankruptcy estate and the reorganized debtor, arguing the eviction suit cannot harm the estate because the plan has been confirmed and the estate has concluded. The court rejects this interpretation of § 1334(b).

In *Majestic Energy* the Fifth Circuit held an action was related to a bankruptcy case because it could impact "the execution of the Plan and [the debtor's] actions in administering the estate." 835 F.2d at 91. In the present case the record adequately discloses at least a conceivable impact [17] upon RHC if CGL successfully establishes

---

**15.** CGL concedes the bankruptcy court initially had jurisdiction over the lease until the point the lease was deemed rejected by operation of § 365(d)(4). *See* Appellant Br. at 7.

**16.** 28 U.S.C. § 1334(b)

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the dis-

trict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**17.** For reasons explained *infra* at § IV(E), the record does not, however, establish a substantial burden upon RHC.

that Coral Gable Hospital's interest in the Hospital Lease has been terminated or that CGL has any greater rights under the lease by virtue of RHC's bankruptcy or failure to assume its interest in the lease. The adversary proceeding therefore satisfied the requirements for "related to" jurisdiction. *See In re American Hardwoods, Inc.*, 885 F.2d 621, 624 (9th Cir.1989) (bankruptcy court had "related to" jurisdiction over debtor's motion for permanent injunction of creditor's state court action against non-debtor guarantors of bankrupt's debt where enforcement of guaranty "could conceivably" affect administration of debtor's plan).

**C**

The next question presented is whether the adversary proceeding was core or non-core.[18] In this case, the determination is bipartite, dividing into whether the court below had core authority to enter the injunction against continuing the Florida eviction action, and whether the bankruptcy court possessed the power to enjoin future eviction actions initiated by CGL.

■ As CGL concedes, *see* Appellant Rep. Br. at 15, the injunction as it related to continuation of the post-petition Florida county court action was a core proceeding. It arose under title 11 because the complaint stated a claim for violation of the automatic stay. The bankruptcy court therefore had authority to decide as a core matter whether to void the post-petition, pre-confirmation eviction action. That decision is subject to review under appellate standards.

For reasons set out below, the court does not reach the question whether the bankruptcy court had core or non-core authority over the portion of the injunction that addressed future litigation. If the bankruptcy court's authority was core, this court

reverses the injunction under applicable standards of appellate review; if the court below had only non-core authority, this court on *de novo* review declines to enter the same injunctive relief.

**D**

Having decided the bankruptcy court had core authority to determine the validity of the pre-confirmation eviction action, the court now turns to the merits of CGL's arguments on appeal.

■ CGL contends the bankruptcy court erred when it held the eviction action was commenced in violation of the automatic stay because the stay is inapplicable to a post-petition cause of action and RHC's rejection of the Hospital Lease—on which the eviction action is based—could only have occurred post-petition. CGL contends if the automatic stay did apply at all post-petition, it expired at the end of the 60–day period prescribed by § 365(d)(4). The court disagrees.

Section 365(a) provides, with exceptions not applicable here, that the rejection of an unassumed, unexpired lease constitutes a breach of the lease immediately before the date of the filing of the petition. The eviction action therefore violated the automatic stay and the bankruptcy court correctly enjoined CGL from continuing that case. This portion of the injunction is affirmed.

**E**

■ CGL next asks this court to reverse the portion of the bankruptcy injunction that precludes it from seeking to terminate the Hospital Lease based on RHC's bankruptcy or its rejection of the Hospital Lease. CGL challenges the power of the

---

**18.** As appellees point out, *see* Appellees Br. at 26, CGL did not address this issue in its opening brief. It did so in its reply brief, however, *see* Appellant Rep. Br. at 14–16, and appellees were permitted to file a surreply brief. Deciding the issue does not under these circumstances run afoul of the rule against addressing matters first raised by way of reply. *Cf. Hunt,* 124 B.R. at

210 n. 11 (declining to consider arguments presented for first time in reply brief). Even if it did, this court must in any event determine the question on its own since it implicates bankruptcy court authority and Article III considerations and because CGL plainly raised jurisdictional arguments in its opening brief.

bankruptcy court, post-confirmation, to permanently enjoin a creditor's claim against a nondebtor where the property in dispute is no longer part of the debtor's estate.[19]

Section 105(a) of the Code empowers the bankruptcy court to issue, *inter alia,* any order "that is necessary or appropriate to carry out the provisions of this title." On its face, § 105(a) is limited to those exercises of judicial authority that have specific relevance to a Code provision. *See In re Ionosphere Clubs, Inc.,* 124 B.R. 635, 642 (S.D.N.Y.1991) (§ 105(a) power "can be exercised only within the confines of the Bankruptcy Code"). In the context of extra-bankruptcy actions, courts have exercised § 105(a) power on a temporary basis when persuaded the action could substantially and deleteriously impact a pending bankruptcy case. *See, e.g., In re Chateaugay Corp.,* 109 B.R. 613, 621–22 (S.D.N.Y.1990) (upholding bankruptcy court order enjoining prosecution of district court class action against nondebtors where necessary to protect bankruptcy court's jurisdiction and to preserve integrity of reorganization process), *appeal dism'd and case remanded for clarification,* 924 F.2d 480 (2d Cir.1991) (per curiam). There is an important distinction to be drawn between a bankruptcy court's authority under § 105(a) to enter permanent, as opposed to temporary, injunctive relief in matters involving nondebtors and non-estate property. *See, e.g., In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 599–600 (10th Cir.1990) (per curiam) (distinguishing between temporary and permanent injunctive relief and viewing permanent injunction as presenting "more serious problem"), *modified in part on other grounds, Abel v. West,* 932 F.2d 898 (9th Cir.1991) (per curiam). But the court need not decide today how much greater is the burden for granting permanent relief. It is sufficient to conclude that a permanent injunction must be supported at least by grounds sufficient to warrant temporary relief and that such grounds are lacking in the present case.

In order for a bankruptcy court to grant temporary relief pursuant to § 105(a) restraining an extra-bankruptcy action involving nondebtors and non-estate property, the court must be satisfied on the basis of competent evidence that the proceedings will sufficiently harm or interfere with the debtor's bankruptcy case. *See Western Real Estate,* 922 F.2d at 599 (citing 2 *Collier on Bankruptcy* ¶ 105.02 at 105–7 to 105–9 (15th ed. 1990)). Thus, to warrant even a preliminary injunction, there must be a "substantial burden sufficient to justify a stay." *Id.* In each instance in which a preliminary injunction over nondebtors and non-estate property is entered, the bankruptcy court must justify that the relief—in the words of § 105(a)—"is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." A variety of factors may inform the bankruptcy court's judgment, *see Western Real Estate,* 922 F.2d at 599 (noting "[t]he Fourth Circuit has evolved a fairly well-developed approach"), but it is essential that there be a basis for concluding "the bankruptcy process will somehow be burdened or impaired as a consequence"[20] of an extra-bankruptcy action against a nondebtor third party.

In the adversary proceeding below, the bankruptcy court based its decision to grant permanent injunctive relief on this narrow ground:

> Because [RHC's] bankruptcy filing cannot permit, as a matter of Federal bankruptcy law, the termination of the lease as to the other lessee who's not in bankruptcy, [Coral Gables Hospital], there must be further injunctive relief issued besides the dismissal of the complaint that was filed in violation of the stay.

---

**19.** CGL also presents several other challenges to the injunction. In view of the disposition of this issue, the court does not reach them.

**20.** This language is taken from *Western Real Estate,* 922 F.2d at 599, and applied for a proposition that is different from, although not inconsistent with, that for which this court now quotes it.

May 30, 1990 Tr. at 103. *See* July 25, 1990 Order at ¶¶ 5–6 (RHC bankruptcy filing cannot be grounds for terminating Coral Gables Hospital's interest in Hospital Lease or cause termination of the lease). Assuming this conclusion is correct (a proposition CGL vigorously challenges on appeal), it does not explain why the court should have enjoined CGL's claim against nondebtor Coral Gables Hospital regarding property that, by virtue of the court's contemporaneous ruling, was no longer part of RHC's estate. There are no findings that the injunction was necessary or appropriate to carry out a particular Code provision or that other litigation would impose a substantial burden upon, or otherwise substantially impair, the bankruptcy process.[21] Essentially, the bankruptcy court determined the legal effect of its decision regarding RHC's rejection of the Hospital Lease and enjoined future litigation of that issue as well as of the effect of RHC's bankruptcy.

This court thinks it necessary, however, that the extraordinary step of prohibiting future litigation that does not involve a debtor and estate property be based upon clear findings that the injunction is necessary or appropriate to carry out a particular Code provision or that it is required in order to avoid a substantial burden or impairment to the debtor's case or estate administration. Absent such findings, the bankruptcy court lacks authority under § 105(a) to give its rulings collateral estoppel effect by silencing litigation over them in another forum.

Even had the bankruptcy court made the necessary findings in the present case, however, the record would not have supported them. The reason RHC and Coral Gables Hospital sought the injunctive relief in question is succinctly set out by their counsel in his closing argument below: to prevent CGL from taking action to terminate, modify, or forfeit appellees' rights "by reason of what occurred in [the bankruptcy] court during the [RHC] Chapter 11 proceeding." May 30, 1990 Tr. at 88. To facilitate this, RHC and Coral Gables Hospital wanted "to clean off the record" so that in any state court eviction action appellees could "hand a judge in another court" an injunction that will permit the state court judge to "understand what issues [the bankruptcy court] said can be heard and what issues [the bankruptcy court] suggested were already decided on collateral estoppel basis by [the bankruptcy court]." May 29, 1990 Tr. Vol. I at 82 (opening statement). In closing argument, appellees' counsel reiterated the point, stressing "it's very important to us not to send us back to some poor state court judge to listen to these arguments rehashed to him because there was no injunction order entered clearly and definitively saying, thou shalt not argue this anymore." May 30, 1990 Tr. at 66; *see id.* at 87 (arguing CGL will attempt to invoke federal doctrine "to do nothing other than attempt to confuse a state court with doctrines that it does not regularly deal with"). Counsel also contended it was necessary that the bankruptcy court, on the basis of one or more legal theories advanced by RHC and Coral Gables Hospital, prevent "the prosecution of these federal theories of forfeiture or termination as a means to forfeit or terminate the lease." *Id.* at 93.

Appellees introduced no evidence during the hearing[22] to justify this relief. They offered only their counsel's arguments. It is, of course, well settled that the arguments of counsel are not evidence. Assum-

---

21. Although this court has determined *supra* at § IV(B) that the adverse consequences of RHC's bankruptcy on Coral Gables Hospital are sufficient to confer at least "related to" jurisdiction upon the bankruptcy court, the question whether the specific relief awarded by the bankruptcy court is justified by the record is distinguishable. The jurisdictional test measures whether a proceeding "could conceivably have any effect." *See Wood,* 825 F.2d at 93. A § 105(a) injunction requires proof of a "substantial burden."

22. To the extent such evidence was presented in another manner, the bankruptcy judge did not expressly purport to rely upon it. His rulings were made in relation to the motion to assume and request for permanent relief. *See* May 30, 1990 Tr. at 94.

ing *arguendo* that they are, the statements represent counsel's apprehension regarding another court's capacity to understand and apply collateral estoppel principles; they are not proof either that the injunction is necessary or appropriate to carry out a particular Code provision or of a substantial burden or impairment to the debtor's case or estate administration.

The court holds the bankruptcy court erred in the present case by extending its § 105(a) power on a permanent basis to nonbankrupt parties involved in a dispute over non-estate property. Alternatively, the bankruptcy court abused its discretion in doing so. This portion of the injunction must therefore be reversed.[23]

\* \* \*

In No. 90–2407, the bankruptcy court's order denying debtor's motion to assume interest in unexpired lease is AFFIRMED. In No. 90–2408, the portion of the bankruptcy court's order issuing permanent injunction that enjoins CGL from continuing pre-confirmation litigation against Coral Gables Hospital is AFFIRMED and the portion that enjoins CGL from commencing litigation seeking to terminate its lease with Coral Gables Hospital on the basis of RHC's bankruptcy and rejection of the lease is REVERSED.

AFFIRMED in part; REVERSED in part.

---

**23.** Were there a basis in the record below to make such findings, and the bankruptcy court had simply failed to articulate a proper basis for its decision, this court would vacate and remand for entry of appropriate findings. The court is satisfied, however, that the record does not support such an injunction.